Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

_____ Division

FILED

U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 SEP 19  PM 1: 04

MARGARET DOTKINS, CLERK
CASPER

Jeremy E. Smith

_Plaintiff(s)_

(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

–v–

Banner Health d/b/a Wyoming Medical Center

_Defendant(s)_

(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)

(See attached)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 22 CV 202 – KHP

_(to be filled in by the Clerk's Office)_

Jury Trial: _(check one)_ ☐ Yes  ☒ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

1

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name        Jeremy Smith
Address      6043 Overlook Way
             Casper        WY        82604
             *City*        *State*    *Zip Code*

County       Natrona
Telephone Number   615-838-6655
E-Mail Address     jeremy.smith070@gmail.com

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name             Banner Health d/b/a Wyoming Medical Cente
Job or Title *(if known)*
Address          c/o 1233 E. 2nd Street-
                 Casper        WY        82601
                 *City*        *State*    *Zip Code*
County           Natrona
Telephone Number   307.577.2049
E-Mail Address *(if known)*   Shantel.Moore2@bannerhealth.com
☐ Individual capacity    ☒ Official capacity

Defendant No. 2

Name             Lance Porter
Job or Title *(if known)*   Chief Executive Officer
Address          1233 E. 2nd Street - C Suite
                 Casper        WY        82601
                 *City*        *State*    *Zip Code*
County           Natrona
Telephone Number   307.577.2049
E-Mail Address *(if known)*   lance.porter@bannerhealth.com
☒ Individual capacity    ☒ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Defendant No. 3

Name     *Patti Farmer*

Job or Title *(if known)*     *Division HR Business Partner*

Address     *C/o 1233 E. 2nd St - HR*

    *Casper*     *WY*     *82601*

       City        State        Zip Code

County

Telephone Number     *970.810.6686*

E-Mail Address *(if known)*

☐ Individual capacity     ☐ Official capacity

Defendant No. 4

Name

Job or Title *(if known)*

Address

       City        State        Zip Code

County

Telephone Number

E-Mail Address *(if known)*

☐ Individual capacity     ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☐ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

(Please see attached)→IID.

## III.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

B.   What date and approximate time did the events giving rise to your claim(s) occur?

C.   What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?  Was anyone else involved?  Who else saw what happened?)*

( Please see attached) III–A, B, C

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## IV.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.



## V.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

(Please see attached– V)

**VI.**    **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.**    **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     _9/16/2022_

Signature of Plaintiff     _Jeremy Smith_

Printed Name of Plaintiff     _Jeremy Smith_

**B.**    **For Attorneys**

Date of signing:     _____

Signature of Attorney     _____

Printed Name of Attorney     _____

Bar Number     _____

Name of Law Firm     _____

Address     _____

                        *City*         *State*         *Zip Code*

Telephone Number     _____

E-mail Address     _____

*Jeremy E. Smith v. Banner Health, d/b/a/ Wyoming Medical Center – Addendum*

(II-D). Defendant, Banner Health, by and through its agents, Lance Port, CEO, and Patti Farmer, Division HR Business partner, engaged in willful and deliberate acts of disparate treatment and discriminatory practices towards me, the Plaintiff, including: (1) disparate and unequal pay; (2) targeting me for unfair treatment, ostracization, and debasement; (3) being unfairly and inappropriately disciplined;  (4) denied a promotion and transfer of which I was the most qualified candidate; and (5) ultimately blatantly disrespectfully and involuntarily discharged.  I believe that above adverse treatment was due to my race, black, African American.  After exhausting all internal avenues to resolve these issues, I filed a charge with the EEOC's WFEP in Wyoming. I was then notified by the WFEP that due to budgetary cuts and staff shortages, they didn't know whent they would be able to investigate my charge.  Therefore. I request a right-to-sue letter from the EEOC. (Please see Exhibit 7)

The basis for these actions are race-based, impermissible under law, and therefore violate Section 1983 of 42 USC ss; and, Title VII of the 1964 Civil Rights Act. I

(III-A).  The events and actions of my claim all occurred at Banner Health's facility located as 1233 E, 2ⁿᵈ Street, Casper, WY 82601.

(III-B).  Issue 1: The disparate and unequal pay occurred during employment tenure at Banner of January 2019 through January 2022.

Issue 2: The targeting for unfair treatment; ostracization, and debasement occurred during the approximate time period of March 2021 through January 2022.

Issue 3: I was unfairly and inappropriately disciplined in May of 2021.

Issue 4: I was denied a transfer and promotion in December of 2021.

Issue 5: I was unfairly and illegally terminated on Jan. 12, 2022.

(III-C).  The underlying facts of my claim include:

Issue 1: *Disparate Pay*-- During the entirety of my tenure at Banner Health, I was later to discover that I was paid disparately in y two predecessors in the role—both of

Smith v. Banner Health

whom are white—received higher salaries than me. I had no way of knowing this because I was not privy to wage scales of the two employees. Based on anecdotal information, I had suspected that I was being underpaid. It was only after Mikke Lindblom resigned that he told me what his salary had been; at this time I went to HR VP Donna Hoffman—she confirmed this. I was advised that due to budgetary reasons, I was not being paid what my predecessors were being paid. I therefore worked the HR Manager role from 2019 to 2021 as an interim and was paid considerably less. I was advised that this would be soon corrected, but it never was.

Issue 2 *Targeted for Unfair Treatment*

A. CEO Porter Targets Me for Retaliation:

In early March 2021, after a torrid meeting with WMC CEO Lance Porter, Vice President of Human Resources, Donna Hoffman, calls me into her office. Distraught and visibly shaken, Hoffman tells me: **"Jeremy watch your back— Lance is gunning for you!"** Naturally, I was very taken aback by Hoffman's statement, and asked her what this was about. She explained that I was **"making waves, and Lance is out to get you."** Hoffman went on to tell me that Porter did not like all my inquiries and raising concerns about diversity, my perception of Banner's biased hiring—she said that since this was Porter's first tenure as CEO, he wanted everything smooth and "pristine" and Porter felt I was **"muddying up the waters."** Understandably, I found Hoffman's disclosure to me very surprising, given that my inquiries and questions raised were legitimate cogent critiques and done in a professional manner. In addition, some of the

questions I had escalated to Banner Health officials were questions that had come to me from several African American WMC employees and as HR manage, I felt obligated to escalate: Although I initially doubted Hoffman's warning to me about Porter, the following events and their temporal proximity to Porter's threat are compelling and purport retaliation and targeting by Porter.

B. Porter "Crashes" My Managers Training Session

In May 2021, I began conducting a series of "best practices" seminars for managers. Hoffman had asked me to develop a series of presentations for our managers in an effort to assist them with their transition from a stand-alone hospital to being a part of a large matrixed organizations such as Banner. Hoffman asked me to conduct the seminars since I previously taught at Colorado State University and given my background at large

matrixed organizations such as Hewlett-Packard and Fresenius Medical. Just as I began my first session, to my surprise, Lance Porter comes in unannounced, sits in the front row, and begins taking copious notes of my presentation. It was WMC's practice and procedure that if a member of the "C-suite" were to attend a presentation or meeting, the person conducting the session would be notified in advance. This did not happen. I attempted to engage Porter and he continued the awkward encounter by saying nothing, staring straight ahead and when my session ended, he said nothing to me, got up and promptly walked out. The next day. I was advised by Hoffman, that Porter has cancelled my series of presentations—I was given no reason, no explanation, only Porter had cancelled them.

C. I am Subjected to Disrespectful Treatment:

Although I have 20 years of employee relations and HR experience at such major companies as Hewlett Packard, Vanderbilt Medical Center, Fresenius Medical, when Banner Health acquired Wyoming Medical Center, I was immediately regulated to an "office boy" status—being asked by Banner officials on a regular basis to make copies for them; given menial tasks such as looking up social security numbers and run

errands for them, although my position at the time was HR Manager. (Please see exhibits 3, 4 and 5). I was purposefully excluded from their meetings and often left in the dark as to office proceedings.

Issue 3: I am Unfairly Disciplined

Later that May of 2021, I was written up and disciplined for intervening in a bullying matter between a white employee and an African American employee. Although I was doing my job as HR manager and upholding policy, I was disciplined and the white employee accused of bullying, strangely was not. I was told by Donna Hoffman, HR VP. that this write up and other adverse actions to come were taken against me were precipitated and initiated by Banner Health/Wyoming Medical Center's CEO, Lance Porter, who had targeted me because as I was told, "I was making waves:"  I received a "Verbal Warning" discipline letter from Donna Hoffman, who tells me that Porter himself personally instructed her to do so. My initial reaction was that why is Lance Porter, the CEO, reaching down to discipline me, when he is some five report levels above me?

 Secondly, when I was given the reasons for my write up. I am asking why am I, the HR Manager, being written up for what seems like semantical aversions to my choice of words? I chose not to participate in the  subsequent "tainted" and biased  investigation by Banner Employee Relations because it was  so slanted and disingenuous--my intervention in the situation was necessary because a long-tenured employee was coming over to another department scolding and demanding deliverables from another employee and I simply sought to explain to her the correct way to request service—was via myself, the department manager, not directly to the employee. Admittedly, our email chain got lengthy. However, this problem had festered and become unresolved. Again, this all was a smokescreen to force me out the company and to end my career at Banner—and this again was predicated and initiated by Banner's CEO, Lance Porter. (See Exhibit 2).

I was later to learn that Banner's HR officials compartmentalized information and kept from me the numerous complaints—approximately 17 women of color contract nurses who had many complaints about their treatment at Banner Health. According to HR Assistant, Cindy Allotey's account ,the contract nurses were referenced disrespectfully by

their race, called demeaning names and although Banner Recruiting department were notified, the issues were never addressed nor suitably assigned to me to investigate. The abject double standard here is clear and is quite noticeable: black women were called "darkies" "spooks" and this apparently was acceptable to Banner, yet I. a black man, am written up and disciplined for using the words, "serve" and "myopia".

Issue 4: I am Denied Transfer and Promotion

In approximately October of 2021, I applied for an employee relations consultant position at Banner because I had done similar positions for some 20 years.  Although I had more experience than the white candidate, John Hoene, Banner officials gave the position to Hoene.  Banner officials would not give me further information about Hoene but said that he had extensive employee relations experience and comparable experience to mine. I asked Shantel Moore, Banner HR Business Partner, and others, how could this be since the white candidate had been in a HR Consultant role for the previous five years and HR Consultants at Banner do not handle employee relations matters?  Again, the lies and deceit and misrepresentation come forth. (Please see Exhibit1).

Issue 5:        My Adverse Treatment Culminates in an Unwarranted Firing

A. Following the above events, it became abundantly clear that I was not wanted as a Banner employee—I did not in their minds fit their culture. (Please see Exhibit 2). After the transfer denial. I was subjected to adverse treatment in an obvious attempt to force me out the company.     I was on a continual basis, ostracized and excluded from the Banner HR community—omitted from meetings, and often information was withheld from me. I was pretty much isolated.  In addition, I had to endure the occasional senior citizen jokes and

often reminded of the status that I occupied in this Banner world.  The most demeaning aspect of my adverse treatment during my tenure at Banner Health was the belittling tasks and assignments given me by Banner HR. Although at the time, I was the HR Manager, and had six subordinate employees--three of whom were administrative assistants—I was asked directly by Banner management to make copies, print fliers and deliver articles to other departments. (Please see Exhibits, 3, 4 & 5).  This was part of a concerted effort to demean and belittle me, and ultimately make me resign.

B.  When I could take this adverse treatment no longer, I then asked for a mutual separation, wanting to discuss the terms and conditions of my separation from the company, but a negotiated, no-fault mutually agreed upon separation was not offered me. I was scheduled to meet with Patti Farmer, Banner HR Division HR Business Partner, on Jan. 14, 2022—Farmer abjectly and deliberately misled me to believe that at this meeting, she wanted to hear my concerns and others about workplace issues and disparate treatment within the workplace environment. Instead, suddenly and abruptly, Banner HR Business Partner Shantel Moore comes into my office on the afternoon of Wednesday, Jan. 12, 2022, and with Farmer on her cell phone, tells me that my employment has ended, and I had to leave the building immediately. Moore calls in Security and I am escorted out by a security officer.  So my separation was not mutually agreed upon and the meager figure that I ultimately had to accept in part to, came after I was involuntarily terminated, denigrated by a security escort out the building—other employees such as Donna Hoffman and Tracy Guseman in HR who are white left around the this time and they were not escorted out in this embarrassing way—Banner officials say this was standard procedure, and I counter by saying this is utterly and completely false and given Banner's dearth of knowledge about interacting with people of color-- this action strongly purports and demonstrates racial profiling and disparate treatment. What had I done to

receive this type of humiliating treatment? As I mentioned, other employees who are white and entered into separation agreements around this time, we allowed to resign, announce their last day of work and have farewell parties—what had I done to warrant this type of adverse and humiliating treatment? The manner in which Banner Health chose to terminate me with a security escort perpetuates the historical stereotype that black men are inherently violent and therefore must be dealt with by force.

IV.    Injuries

Banner Health's unwarranted termination of my employment demonstrates mean-spiritedness and an overall callous discharge for my well-being. I have a terminal kidney disease that requires a transplant, and so when Patti Farmer and Banner abruptly and without notice fired me on Jan 12, (Pease see Exhibit 6). I was left with no income, and without medical insurance. In addition, I was later notified by UC Health, the medical facility who was to perform my transplant, that I needed to show financial responsibility for my post-transplant care. Consequently, I had to cash out much of my 401k and deplete most of my savings in order to demonstrate financial responsibility land to offset the costs of the astronomical COBRA insurance premiums and my monthly prescription and medical costs. The weight and strain of this unplanned financial burden and having my transplant delayed due to this, has caused me appreciable emotional duress and mental anguish.

Moreover, the manner in which Banner Health chose to terminate my employment has significantly damaged my professional reputation and career opportunities in this community: Not more than a week after my dismissal from Banner, I was meeting friends at the Office Bar & Grill. Located at 520 S. Ash St. in Casper. And immediately upon my arrival there, one of the waitresses who knew me, said to me: "Jeremy—I heard you got canned up at the hospital!" And approximately one week later, at the dialysis center, a nurse who also works at the hospital, tells me that she heard that I had been fired and was escorted out by security. These are natural reactions because a termination that requires a security escort from the building is associated with significant misconduct and malfeasance.

13

<u>Smith v. Banner Health</u>

V.    Relief

I am requesting the following monetary relief:

A. <u>Compensatory Damages</u>
- I am seeking restitution of my 401k and savings that nearly had to be exhausted due to the illegal termination……………………………………………..$31,000.00
- I am seeking restitution for the cost difference of COBRA premiums, prescriptions and medical costs incurred due to loss of medical insurance caused by the termination beginning, Feb 1, 2022, ($1,925.00 X 4 months)…..$7,700.00
- I am seeking restitution of my dialysis treatment due to uncovered insurance status (I have since recovered a partial sum on this amount after my Medicare eligibility was backdated.)…………………………………………………$7,200.00
- I am seeking restitution of lost wages through September 2022 (10 months of separation x [$50.00/hr rate x 160 total mo. hrs= $8,000.00] = $80.000.00 - $52,000.00 (Banner severance provided) =……………………………..$27,000.00

I am seeking restitution of the costs incurred from the court costs, legal consultation, materials, mailing expenses and notice of service fees associated with this matter……………………………………………………….,………………$1,250.00

B. <u>Punitive Damages</u>

In addition to the above actual damages, I am seeking punitive damages because Defendant's actions are wholly mean-spirited, performed with callous disregard for my well-being.  I was deprived of income, medical insurance and prescription subsidies without notice and without reason.  This arbitrary and capricious action was without merit, or suitable due process, and given my terminal illness jeopardized my life. I am therefore asking punitive damages in the amount of ……..$50,000.00

_____

|                           |                 |
| :------------------------ | :-------------- |
| **Total relief requested:** | **$124,150.00** |

I thank the Court for its diligence and review of this matter and pray for relief that the Court will grant the requested restitution.

**Smith, Jeremy**

Exhibit #1

| | |
|---|---|
| **From:** | BannerHealth HR <bannerhealth@myworkday.com> |
| **Sent:** | Friday, December 17, 2021 12:47 AM |
| **To:** | Smith, Jeremy |
| **Subject:** | Position Update - Employee Relations Consultant |

Dear Jeremy ,

Thank you for participating in the interview process for the Employee Relations Consultant position with Banner Health. We appreciate your commitment throughout the process, and it was a pleasure getting to know more about you. At this time, we have decided to select another applicant to move forward in the interview/hiring process and wanted to notify you as soon as possible.

We encourage you to continue to explore other opportunities with Banner Health by visiting our careers center. At Banner Health you'll enjoy an engaging work culture, excellent growth opportunities, comprehensive benefits and a variety of settings in which to practice.

If you have applied for multiple positions with Banner Health, please login to your Banner Health Career profile to view the status of your remaining applications. Please visit www.bannerhealth.com/careers to access the careers website and log in.

Once again, we thank you for your interest and wish you much success in your career pursuit.

Kind Regards,
Your Banner Recruitment Team

This email was intended for Jeremy.Smith@bannerhealth.com · **Manage Preferences**

**Smith, Jeremy**                                                  Exhibit #2

| | |
|---|---|
| **From:** | Smith, Jeremy |
| **Sent:** | Tuesday, January 4, 2022 8:42 AM |
| **To:** | Farmer, Patti A |
| **Cc:** | Moore, Shantel |
| **Subject:** | RE: Employment Status |

Good morning, Patti,

Yesterday, my supervisor, Shantel Moore, sent me the following email below, inquiring about my "employment status" at Banner. Given the vague and non-descript job description of the position, ) I previously decided that I should make a good faith effort to better understand the role. However, I see the handwriting is apparently on the wall as Banner management is inquiring about my "employment status" after only my four working days in the role.

Accordingly, I offer the following response to Banner management's inquiry about my employment status:

After careful consideration of the events and circumstances surrounding my recent candidacy application for the ERC role at Banner and initial immersion into what Banner calls the HRC role, I truly believe that it is in my best interest and the company's as a whole that I explore "alternative strategies". The basis for my decision stems not only from my overall observations of the Banner culture being immensely monochromatic and culturally void, but my experiences during my recent candidacy have confirmed my initial impressions, observations and experiences. Perhaps however this failed candidacy for a role that I was more than qualified for, serves as a cultural litmus and helps me to appropriately widens my eyes to the stark, sobering reality of the aversive racism that permeates this company and to great degree, this country.

I must tell you that I had low expectation for positive outcome in the ERC search process, given the company's composition but when I was notified who the hiring manager and decision-maker was, someone whose cultural mosaic index is probably no higher than a 1 or 2 and coupled with the preexisting bias that has been shown toward pre-acquisition WYMC employees by Banner officials and the immensely aversive systemic barriers that exist--well, the outcome was not at all surprising to any cogent, rational individual. Much like a lot of contemporary racism, the so-called Banner way appears to be simply aversiveness with a smiley face.

I must also tell you that several discrepancies have arisen from this search process—I won't go into detail at this time, but suffice it to say that discrepancies do indeed exist and have been well-documented. Principally, I was advised that the successful candidate's requisite experience was comparable to mine, however I have found out that he currently is and has been so the past five years, an HRC in Torrington, WY. It is puzzling how his experience is comparable since he has not done primary ERC work in his HRC capacity and I have for over 20. But it is what it is as they say, and I know what I see and what I feel. Aside from the shabby and marginalized treatment, (it is wholly regrettable and unfortunate that I had to find out from a direct report that John Hoehne of Torrington was chosen for the ERC role) but this goes along with the standard disparate treatment while at this company. Again, I will not go into detail at this time, but suffice it to say that I have documented much in this way, both premerger and post-merger.

Although in your Banner world, I have demonstrated competency and proven to be an employee relations asset during the COVID vaccine policy compliance process, was point on two EEOC cases and commended by

Littler attorneys, and successfully managed and investigated a fraudulent vaccine card by a Banner leader that led to an involuntary termination, but I apparently do not have what it takes to be an ERC at Banner. We all know what takes, and it has nothing to do at all with merit and/or capability—it is all about who have privilege in the Banner world and who doesn't.

Lastly, deployed in the role as an ERC within Banner was perhaps a tolerable existence, however cast in a dressed up admin/event planner role of an HRC (yesterday, I was asked to go around and post fliers and delivery badges to employees) is truly insufferable, and one that is unattainable for me in several ways. I have neither the skillset nor the appetite for this type of non-HR work, and saddling me with deliverables for which I am not familiar with and have not been trained on is quite counter-productive for me and the company. One can make conjecture that this type treatment is planned strategy on the company's part—akin to the experiences that Donna often complained about before she departed this company: being assigned loads and loads of menial tasks and non-strategic deliverables to the point that it was no longer tolerable for her. Before we go down the path of a constructive discharge. Let me be clear—I can see one of those from a mile away and unlike Donna, will not be driven out in that manner. I don't think that would be favorable for either party in this matter.

I therefore would like to advance consideration of a MSA—if the company has interest in this, I will be amenable to discussion as well. If not, please let me know as soon as you can and I will review alternative avenues to address my concerns with this company, one that will probably involve the legal arena. Perhaps we can discuss this in more detail after the new year. Thank you. Happy holidays.

**From:** Moore, Shantel <Shantel.Moore2@bannerhealth.com>
**Sent:** Monday, January 3, 2022 12:58 PM
**To:** Smith, Jeremy <Jeremy.Smith@bannerhealth.com>
**Subject:** Employment Status

Hi Jeremy,

I just wanted to touch base with you on what you have decided regarding your employment status with Banner? I am happy to discuss in person if you would prefer. I can be available at 4 PM.

Thanks,

Shantel Moore, MA, SPHR
HR Business Partner
Banner Wyoming Medical Center
Office: 307-577-2049
Cell: 307-670-5920

**Smith, Jeremy**                                          Exhibit 3

| | |
|---|---|
| **From:** | Farmer, Patti A |
| **Sent:** | Tuesday, November 30, 2021 8:48 AM |
| **To:** | Smith, Jeremy |
| **Subject:** | FW: org chart |
| **Attachments:** | WMC Detailed Org Chart March 11 2021.pdf |

Can you print 2 copies of this for me...................

**Patti Farmer**
Division HR Business Partner
Western Division
970-810-6686 office
720-581-2606 cell



**From:** Young, Amy <Amy.Young@bannerhealth.com>
**Sent:** Tuesday, November 30, 2021 8:24 AM
**To:** Farmer, Patti A <Patti.Farmer@bannerhealth.com>
**Subject:** RE: org chart

Here is what I have that I have made some updates to but there have probably been changes since
then.  Donna took it over and no one else has the program on their computer to update it and we don't have
the original to use for updates.

*Amy Young*
Executive Administrative Assistant
Administration & Nursing Departments
Banner Wyoming Medical Center
1233 E 2nd St.
Casper, WY 82601
Phone - 307-577-2171
Fax - 307-577- 2203

Confidentiality Notice:
This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain
confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you
are not the intended recipient, please contact the sender by email and destroy all copies of the original message.  All
opinions expressed herein are the author's alone and do not represent the opinions of the Wyoming Medical Center.

**Smith, Jeremy**

Exhibit 4

| | |
|---|---|
| **From:** | Farmer, Patti A |
| **Sent:** | Monday, November 29, 2021 8:13 AM |
| **To:** | Smith, Jeremy |
| **Subject:** | couple things to print - thank you |
| **Attachments:** | Onboarding Touch Points Catalog (1).pdf; Executive Onboarding Guide (1).pdf |

**Patti Farmer**
Division HR Business Partner
Western Division
970-810-6686 office
Join our Talent Community

≋ Banner Health
Health care made easier. Life made better.

  



**Smith, Jeremy**

Exhibit #5

| | |
|---|---|
| **From:** | Moore, Shantel |
| **Sent:** | Tuesday, December 28, 2021 12:25 PM |
| **To:** | Smith, Jeremy |
| **Subject:** | FW: HR Support |
| **Attachments:** | HR Support.pptx |

**Importance:**        High

Hi Jeremy,

Please print this for our door to assist in directing traffic.  Where else might we post this to assist our TM's in getting the help they need?

Thanks!

Shantel Moore, MA, SPHR
HR Business Partner
Banner Wyoming Medical Center
Office:  307-577-2049
Cell:  307-670-5920

Banner | ♥aetna  Banner Health and Aetna Health Insurance Company
PO Box 14876
Lexington KY 40512-4876

EXHIBIT #6

JEREMY E SMITH
6043 OVERLOOK WAY
MILLS, WY 82604

Jan 21 2022

Member Name: JEREMY E SMITH
Date of Birth: 05/07/1955
Approval Number: 724492760000

The request for the following services(s), kidney transplant, has been approved. This approval is valid from 01/19/2022 through 01/19/2025 to be provided by University of Colorado Hospital.

We use nationally recognized clinical guidelines and resources, Clinical Policy Bulletins available at https://www.aetna.com/health-care-professionals/clinical-policy-bulletins.html, as well as plan benefit documents to support these coverage decisions.

We will cover preauthorized medical services, except for any co-payments or deductibles that may be applicable to your plan. The Company will not cover services provided without preauthorization. If you receive any transplant-related bills from the treating physicians or the treating facility, they should be mailed to the following address:

ACS, Inc.
P.O. Box 981291
El Paso, TX 79998

**Information About Coverage Approvals:** For the services identified above for which coverage has been approved, all three components of our coverage approval process have been satisfied:

- Verification of the member's eligibility for coverage under the plan; and
- Verification that the plan provides coverage for the type of services approved (but, has not verified whether any applicable dollar limits under the plan have been exhausted, or will soon be exhausted); and
- Verification that the approved services meet medical necessity criteria.

Validity of this coverage approval is subject to all those components being satisfied at the time the approved services are actually provided. This coverage approval is NOT effective and benefits may not be paid if:

1. the member's health condition changes materially before the approved services are provided, so that the approved treatment/services no longer meet medically necessary criteria due solely to the member's materially changed health condition; OR

2. the member is no longer covered at the time the approved treatment/services are actually performed; OR

3. the member's premium payment is past due under an individual plan at the time the approved treatment/services are actually performed, and the member did not pay the full premium within the required timeframe; OR

4. the member has exceeded any applicable benefit maximums under the plan; OR

5. for precertification: (1) the specific dates of the approved services (the "from" and "through" dates identified in this letter) have passed or (2) for scheduled services (services planned but not yet received), the approved services have not been provided within six months from the date of this letter; OR

6. there was a material misrepresentation or omission of clinical information about the member at the time of the coverage approval or that there was fraud with respect to the approved services; OR

7. the member's plan no longer includes coverage for the approved treatment/services; plan benefit changes typically occur on the plan anniversary date. Members should refer to the plan document to determine exclusions and limitations under the plan.

To avoid a delay or denial of claim payment for scheduled services, please notify us if the planned date(s) of service or other circumstances regarding the approved services change, or if any additional services are needed beyond those approved. Reimbursement will be based on standard coding and bundling logic and any mutually agreed upon contracted or negotiated rates, subject to any and all copays or coinsurance requirements and payment policies. If the actual procedure/service or service dates on the claim differ from the information we have at this time, there may be a delay or denial in claim processing.

If you plan to receive services from a participating (in-network) provider or facility, remember to confirm that your provider/facility still participates with your plan prior to getting your care. You can do this by using the provider search feature on the member website. Call Member Services at the number on your ID card if you need help or have questions.

<u>No Coverage Financial Sanctions Exclusion Disclaimer</u>
If you travel to a country sanctioned by the United States, the plan cannot provide benefits or coverage to you. Also, if your health care provider is a blocked person or is in a sanctioned country, we cannot pay for services from that provider. For example, if you receive care while traveling in another country and the health care provider is a blocked person or is in a sanctioned country, the plan cannot pay for those services. For more information, visit
http://www.treasury.gov/resource-center/sanctions/Pages/default.aspx

A Washington state consumer notice, Know your rights under the Balance Billing Protection Act, is enclosed with this letter. This notice may apply if the service is being performed in a facility located in WA. Please contact Member Services at the number on your ID card if you have any questions.

**We Protect Your Privacy:**
Protecting the privacy of member health information is a top priority. When contacting us about this Notice or for help with other questions, please be prepared to provide member name, member ID number, and date of birth.

**Patient Safety Information:**
To learn more about patient safety and hospitals, please log on to The Leapfrog Group's website at http://www.leapfroggroup.org/. This site will give you information about hospitals that have met specific safety standards. For participating hospitals, the same information can be accessed on your

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Mr. Jeremy E. Smith<br>6043 Overlook Way<br>Casper, WY 82604 | From: | Phoenix District Office<br>3300 North Central Avenue, Suite 690<br>Phoenix, AZ 85012 |
|---|---|---|---|

| EEOC Charge No.<br>32K-2021-00083 | EEOC Representative<br>Robin Campbell,<br>State, Local & Tribal Program Manager | Telephone No.<br>602-661-0041 |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

> Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date.

> The EEOC is terminating its processing of this charge.

*Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> \*of your receipt of this Notice.\* Otherwise, your right to sue based on the above-numbered charge will be lost.*

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

09/07/2022

Enclosures(s)

**Melinda Caraballo**
**Acting District Director**

cc:   **Kristy L Peters**
**Littler Mendelson, PC**
**2425 East Camelback Road, Suite 900**
**Phoenix, AZ 85016**

**Patti Farmer**
**BANNER HEALTH DBA WYOMING MEDICAL CENTER, INC.**
**2901 North Central Avenue, Suite 160**
**Phoenix, AZ 85012**