# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JEREMY E. SMITH, | |
| Plaintiff, | |
| v. | Case No. 22-CV-00202-SWS |
| BANNER HEALTH *doing business as* Wyoming Medical Center, et al., | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT (ECF NO. 7)

This matter initially came before the Court on Defendants' Motion to Dismiss the Plaintiff's Complaint. (ECF Nos. 7, 8.) Plaintiff responded on October 24, 2022. (ECF No. 14.) Defendants filed a reply on October 31, 2022. (ECF No. 17.) On November 15, 2022, the Court gave notice that it would convert Defendants' Motion to a Motion for Summary Judgment and provided the parties time to submit any supplemental materials to support their respective positions. (ECF No. 21.) Plaintiff provided his supplement on November 30, 2022 (ECF No. 22), and Defendants submitted their supplemental materials on December 2, 2022 (ECF No. 23). Having now considered the parties' arguments, reviewed the record herein, and being fully advised upon the matter, the Court GRANTS Defendants summary judgment.

### BACKGROUND

Plaintiff, Jeremy Smith, brought this action against the Defendant, Banner Health d/b/a Wyoming Medical Center, Inc. ("Banner Health"), and individual Defendants, Lance Porter and Patti Farmer, on September 19, 2022. (ECF No. 1.) Plaintiff's Complaint alleges he was discriminated against on the basis of race, in violation of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. §§ 2000e–2000e-17. Plaintiff alleges he was employed as a Human Resources Manager by Banner Health at Wyoming Medical Center. (ECF No. 1 at 9–10, 12.) Plaintiff alleges he received disparate and unequal pay, was targeted for unfair treatment, received unfair and inappropriate discipline, was denied a transfer and promotion, and unfairly terminated, all in violation of Title VII.[1] (*Id.* at 7.) Plaintiff also alleges he "asked for a mutual separation" and "the meager figure that I ultimately had to accept . . . came after I was involuntarily terminated." (*Id.* at 12.) Plaintiff also attached various documents to his Complaint, including e-mails with employees of Banner Health. (*Id.* at 15–23.)

On October 12, 2022, Defendants moved to dismiss Plaintiff's Complaint on the grounds of Plaintiff's failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 7.) Defendants argue Plaintiff entered into a valid and binding Severance Agreement on January 20, 2022, which prevents him from prevailing on his asserted claims against all Defendants. (ECF No. 8 at 2.) Defendants submitted the signed Severance Agreement in support of their motion. (ECF No. 8-1 at 1–5.)[2] Plaintiff argues in response that although he did sign the Agreement and received $52,000 pursuant to it, he signed under duress. (ECF No. 14 at 2–3.) Plaintiff argues that he suffers from End Stage Renal Disease (ESRD), which requires daily dialysis and treatment alongside associated medical costs, which the Defendants knew of and used "as leverage to coerce Plaintiff into signing [the] agreement." (*Id.*) Plaintiff also argues his

---

[1] Plaintiff makes references to 42 U.S.C. § 1983 (*see* ECF No. 1 at 7) and seems to attempt to allege civil rights violations under that statute as well. However, such claims fail to state a plausible claim for relief because Defendants are not government employees or a governmental entity nor does Plaintiff allege they are.
[2] Defendants also argued Plaintiff's Complaint should be dismissed as to claims against the individual Defendants because (1) Title VII does not afford statutory liability against individual persons, and (2) Plaintiff has not exhausted his administrative remedies as to the individual Defendants. (ECF No. 8 at 2–3, 12.) Given the conversion of their motion to dismiss to one for summary judgment, and the Court's determination that summary judgment is appropriate as to the Agreement barring Plaintiff's claims, the Court declines to address these additional arguments.

2

condition and the need to pay for life-supporting treatment "qualifies as being under extreme undue duress." (*Id.* at 3.)

Given the nature of the materials submitted and issues raised, pursuant to Rule 12(d), the Court provided notice to the parties of its conversion of Defendants' Motion to one for Summary Judgment under Rule 56. (ECF No. 21.) As permitted by the Court, both parties filed supplements. Plaintiff's supplement objects to the conversion of Defendants' motion to one for summary judgment and argues that Plaintiff can or will provide affidavits that substantiate Plaintiff's claim that he was coerced or signed the agreement under duress. (ECF No. 22 at 2–3.) Plaintiff did not actually provide any affidavits, medical records, or additional documents to support his arguments. Defendants' supplement argues there is no genuine issue of material fact showing Plaintiff was coerced or under duress, the evidence demonstrates the contrary, that Plaintiff voluntarily agreed to waive and release his claims in exchange for financial compensation from Banner Health, pursuant to the Severance Agreement. (ECF No. 23 at 2.) Defendants also submitted supplemental materials in support of summary judgment, including a Declaration of John Wells, accompanied by ten (10) exhibits. (*See id.* at 2–3.) John Wells attests he was the Director of Employee Relations at Banner at the time Plaintiff's employment with Banner ended, and he was responsible for the administration of severance agreements, including Plaintiff's. (ECF No. 23-1 at 1–2.)

## LEGAL STANDARD

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See also Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999) ("[A] motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."). If the motion is converted, the

Court must give the parties "a reasonable opportunity to present all the material that is pertinent to the [summary judgment] motion" before ruling on the converted motion. Fed. R. Civ. P. 12(d). This Court provided notice to the parties of its conversion of Defendants' motion to dismiss to one for summary judgment and gave the parties additional time to submit supplemental materials as required. (*See* ECF No. 21.)

Summary judgment is appropriate where a movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citation omitted). "The district court must draw all reasonable inferences in favor of the nonmoving party. . . . But an inference is unreasonable if it requires a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility." *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (internal quotations and citation omitted), *cert. dismissed sub nom.*, 201 L. Ed. 2d 1128 (Sept. 20, 2018). Additionally, "'[u]nsupported conclusory allegations do not create a genuine issue of fact.'" *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010) (quoting *L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)). The burden of persuasion, however, rests squarely on the moving party. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 980 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003).

Additionally, the Court liberally construes Plaintiff's Complaint and filings, and holds them to a less stringent standard than those formally drafted by lawyers. *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991). However, it is never "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* It is with these standards in mind the Court considers Defendants' Motion.

## DISCUSSION

### A. Duress

Defendants argue Plaintiff signed a Severance Agreement ("Agreement"), expressly releasing and waiving the claims Plaintiff is now asserting against all Defendants.[3] (ECF No. 8 at 6.) Plaintiff argues he signed the Agreement under duress, rendering it void. (ECF No. 14 at 2–3.) "Under Wyoming law a contract may be cancelled because of duress." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

"[D]uress exists whenever a person is induced, by the unlawful act of another, to perform some act under circumstances which deprive him of the exercise of free will." *In re TR*, 777 P.2d 1106, 1111 (Wyo. 1989). "Therefore, in order to show duress in Wyoming a party must show deprivation of free will because of the unlawful act of another." *Applied Genetics*, 912 F.2d at 1241–42. Plaintiff is essentially arguing that he had no economically viable choice other than to sign the Agreement because of his kidney disease and associated medical costs, thus his claim is one of economic duress. In Wyoming, "economic duress occurs when (1) a party involuntarily accepts the terms of another, (2) circumstances permit no other alternative, and (3) such circumstances are the result of coercive acts of the other party." *Blubaugh v. Turner*, 842 P.2d

---

[3] Under the express terms of the Separation Agreement with Banner, "Banner" includes "Banner Health's *officers, directors, employees*, affiliated entities, attorneys, agents, insurers, benefit plans and plan administrators, and Banner Health's successors and/or assigns." (ECF No. 8-1 at 2 (emphasis added).) The Agreement applies to all Defendants in this matter, including the individual Defendants, Patti Farmer and Lance Porter, as Plaintiff's Complaint alleges Mr. Porter is the CEO (*see* ECF No. 1 at 8, 10) and Ms. Farmer worked in Banner's HR Division (*see id.* at 12). There is no allegation by Plaintiff that Ms. Farmer or Mr. Porter's alleged conduct was not in their capacities as employees of Banner, and Defendants do not dispute the individual Defendants' employment at Banner. Therefore, it is undisputed the Agreement includes Ms. Farmer and Mr. Porter.

1072, 1075 (Wyo. 1992). *See also Pittard v. Great Lakes Aviation*, 156 P.3d 964, 975 (Wyo. 2007). A party's weak negotiating or bargaining position, or assertions of duress that are a result of a party's own necessities and not a result of another party's wrongful conduct, are generally not valid bases for duress or avoiding any resulting contracts. *See Strickland Tower Maint., Inc. v. AT & T Commc'ns, Inc.*, 128 F.3d 1422, 1426–27 (10th Cir. 1997) ("The defendant's bad act, not something else, must have forced the plaintiff to sign the burdensome contract."). The Wyoming Supreme Court has summarized the requirements to establish economic duress:

> [M]ore is required from a party asserting economic duress than bald assertions that he or she was deprived of the exercise of free will, had no reasonable alternative and was **coerced by another's wrongful act**. To establish a *prima facie* claim for economic duress sufficient to withstand summary judgment, a party must present concrete evidence of the particular factors depriving him of his free will and giving him no reasonable alternative. A party must also present evidence showing that he was coerced by **wrongful conduct**. Bare allegations that these circumstances existed, without specifics showing their existence, are not sufficient.

*Pittard*, 156 P.3d at 975 (bold emphasis added).

The undisputed facts do not establish a prima facie claim of duress. Plaintiff's Complaint alleges he was fired on January 12, depriving him of income and medical insurance, including the inability to pay for a kidney transplant related to his terminal kidney disease. (ECF No. 1 at 13; *see also* ECF No. 22 at 2.) Plaintiff argues his medical "condition and the need to pay for [his] life support treatment qualifies as being under extreme undue duress." (ECF No. 14 at 3.) The signed Agreement is dated January 20, 2022. (ECF No. 8-1 at 5.) The Agreement contains provisions of waiver to all claims arising out of events that occurred up to the date of signing, as well as waiving and releasing any claims for discrimination and claims under all federal statutes, including but not limited to Title VII. (*Id.* at 2–3.)

Plaintiff has failed to present sufficient facts to demonstrate that he had no alternative but to sign the Agreement. Apart from argument, Plaintiff has not presented any evidence regarding

6

his ability or inability to pay for his medical expenses as of the day he signed the Agreement, or even anytime thereafter. Plaintiff has failed to produce any evidence demonstrating he could not seek remedies at law instead of signing the Agreement. Rather, Defendants submitted e-mails from Plaintiff, including one dated January 13, 2022, to Ms. Farmer discussing a mutual separation agreement. (ECF No. 23-1 at 10–11.) In that e-mail, Plaintiff states, "If what you cited me yesterday is your last and best offer, then I will not waste your time further nor mine. Consequently, in order to provide myself equity, it will necessitate that I ensue a legal proceeding to do so." (*Id.*) In a January 4, 2022, e-mail attached to Plaintiff's Complaint, Plaintiff states, "I will review alternative avenues to address my concerns with this company, one that will probably involve the legal area." (ECF No. 1 at 16–17.) The undisputed evidence suggests Plaintiff was aware of potential remedies at law, going so far as to suggest initiating legal action himself. Without Plaintiff pointing to a lack of alternatives, even assuming the facts in the light most favorable to Plaintiff, Plaintiff has failed to present anything to indicate he would face such immediate financial ruin that he could not seek any other remedy to redress his employment discrimination claims or alleged wrongful termination. *See Blubaugh*, 842 P.2d at 1076 ("Even assuming arguendo that Mr. Blubaugh was wrongfully discharged from his employment and that he was coerced into signing the receipt and release agreement, circumstances must be present which would permit no other alternative to satisfy the third element of economic duress."); *Gibson v. Wal-Mart Stores Inc.*, 181 F.3d 1163, 1168–70 (10th Cir. 1999) (holding the undisputed material facts did not constitute duress).

Similarly, Plaintiff has not established that the circumstances he confronted—impending medical procedures or treatment, and costs—were the result of Defendants' coercive acts. There is no evidence that Defendants had anything to do with Plaintiff's alleged financial circumstances

or medical condition. While Plaintiff argues Defendants knew of Plaintiff's medical condition, there is no documentation or other evidence to support that assertion. Plaintiff's own financial and medical situations, for which Defendants are not responsible, cannot be made the basis of a claim of duress. *See Pittard*, 156 P.3d at 976 (holding plaintiff failed to present evidence that defendant's conduct was wrongful, thus could not survive summary judgment); *Dobson v. Portrait Homes, Inc.*, 117 P.3d 1200, 1206–07 (Wyo. 2005) (plaintiff's claim of economic duress based on property lien could not be sustained where reasonable alternative to entering into settlement agreement existed because plaintiff had other legal options to challenge lien and plaintiff failed to show defendant engaged in any wrongful or unlawful conduct). Plaintiff has not provided any admissible evidence to show Banner's acts were unlawful or deprived Plaintiff of his free will to resist entering into the Agreement.

The undisputed evidence demonstrates Plaintiff was not economically coerced. As discussed more *infra*, Plaintiff negotiated back and forth with Defendants, refusing an initial offer, and ultimately securing substantially more than Defendants originally offered. (ECF No. 23-1 at 4–5.) There is no evidence to support Plaintiff's assertion of economic duress, that he had no other alternative, that Defendants committed any wrongful or unlawful act, or that Defendants' coercive acts caused Plaintiff's circumstances. *See Layton Constr. Co. v. Premier Steel Mfg., Inc.*, No. 11-CV-128-F, 2011 WL 13112715, at *6–7 (D. Wyo. Dec. 12, 2011) (finding no genuine issue of material fact that economic duress defense lacked merit, as party failed to show the second and third elements); *Twiford Enters., Inc. v. Rolling Hills Bank & Tr.*, No. 20-CV-28-F, 2020 WL 5248561, at *9–10 (D. Wyo. Aug. 5, 2020) (holding Plaintiffs failed to demonstrate a genuine dispute of material fact that Defendant wrongfully coerced Plaintiffs into releasing their claims), *aff'd*, No. 20-8048, 2021 WL 2879126 (10th Cir. July 9, 2021).

Even assuming all the facts in the light most favorable to the non-moving party, there has been no presentation of facts or evidence supporting Plaintiff's claim of duress to invalidate the Agreement.

### B. Waiver of Claims

As there is no genuine dispute of material fact that Defendants did not wrongfully induce Plaintiff into releasing his claims, to enforce Plaintiff's waiver, it must also be undisputed that said waiver was knowingly and voluntarily made. If so, Defendants are entitled to summary judgment as a matter of law.

"Title VII . . . employment discrimination claims may be waived by agreement . . . but the waiver of such claims must be knowing and voluntary." *Torrez v. Pub. Serv. Co. of N.M., Inc.*, 908 F.2d 687, 689 (10th Cir. 1990) (per curiam) (citations omitted). The Court must look to the "totality of the circumstances" under which the Agreement was signed, to determine if the waiver was knowingly and voluntarily made. *Id.* at 689–90. The following circumstances should be considered:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* (internal quotations omitted). In assessing the totality of the circumstances in this case, the Court concludes there is no genuine issue that Plaintiff's waiver and release of claims was knowing and voluntary, and Defendants are entitled to summary judgment as a matter of law.

First, it is undisputed Plaintiff requested a mutual separation agreement from Defendants. In his Complaint, Plaintiff alleges he "asked for a mutual separation." (ECF No. 1 at 12.) Plaintiff

9

also attached copies of e-mails to his Complaint, where he requests "advance consideration of a MSA" in an e-mail dated January 4, 2022.[4] (*Id.* at 16–17.) In the affidavit of John Wells, submitted by Defendants, Mr. Wells also attests that it was Plaintiff "who first proposed a separation agreement while he was still a Banner employee" and provides an e-mail sent from Plaintiff, dated January 10, 2022, wherein Plaintiff states, "I am asking for consideration of an MSA, mutual separation agreement." (ECF No. 23-1 at 2, 3, 7.)

Second, the terms of the Agreement are clear and unambiguous. The Agreement is five pages total. (*See* ECF No. 8-1.) The Agreement specifically mentions waiver of claims of discrimination, wrongful termination, and claims under federal laws, including those available under Title VII, the Civil Rights Acts, and the Americans with Disabilities Act. (ECF No. 8-1 at 2–3.) The Agreement advises consulting with an attorney prior to signing (*id.* at 3), provides a period of seven days after signing that it may be revoked (*id.* at 4, 5) and on its last page, in bold, all-capital letters states, "[t]his Agreement is a release of all known and unknown claims. Please read carefully before signing." (*id.* at 5.). Plaintiff does not argue that he did not understand the terms or that he was unaware he was releasing potential claims. Even if he had, and construing the facts most favorably to Plaintiff, it would be an unreasonable assertion for such an experienced, human relations employee to make. Plaintiff's own allegations describe that he previously taught at Colorado State University and has "20 years of employee relations and HR experiences at such major companies as Hewlett Packard, Vanderbilt Medical Center, Fresenius Medical . . . ." (ECF No. 1 at 9.) The terms of the Agreement are unambiguous and Plaintiff's own allegations make

---

[4] Defendants state "MSA" is an acronym for mutual severance agreement. (ECF No. 8 at 9.) Plaintiff did not object or provide an alternate meaning, and based on the allegations of Plaintiff's Complaint and evidence, the Court understands MSA to be an acronym for mutual severance agreement or mutual separation agreement.

clear he had the experience and qualifications to understand he was waiving and releasing any claims for discrimination and other employment-related claims, including under Title VII.

Plaintiff points out the Agreement does not include waiver of "any claims which may arise based on events occurring after the date [he] signed th[e] Agreement." (ECF No. 22 at 3.) Plaintiff then argues "[s]everal of the critical aspects of Plaintiff's complaint were discovered after the Plaintiff signed the agreement . . . most notably, discovery and confirmation that Plaintiff had received considerable disparate pay compared to his predecessor . . . ." (ECF No. 22 at 3.) However, Plaintiff's argument fails, as the alleged disparate pay was during his employment at Banner which ended January 12, 2022. (ECF No. 1 at 7–8). Said employment and allegations of disparate pay are events occurring *before* Plaintiff signed the Agreement on January 20, 2022. (ECF No. 8-1 at 5.) Therefore, the waiver pursuant to the Agreement applies to Plaintiff's claims, including disparate pay.

Third, as previously noted, the Agreement provided Plaintiff seven days to revoke. The Agreement also gave Plaintiff twenty-one (21) days to consider the Agreement before signing it. (ECF No. 8-1 at 4, 5.) According to the affidavit of Mr. Wells, who attests to communicating and negotiating with Plaintiff on behalf of Banner regarding a separation agreement (ECF No. 23-1 at 2), Plaintiff was sent "the first offered" Agreement on January 14, 2022 (*id.* at 4). The first version offered included a $26,244 lump sum payment and COBRA coverage payment of $1,479. (*Id.*) Mr. Wells then spoke with Plaintiff via telephone and based on Plaintiff's requests, revised the offer, doubling the lump sum amount to $52,489 and the COBRA payment to $2,959.[5] (*Id.*) Mr. Wells states the increased compensation "was based directly on Mr. Smith's negotiation." (*Id.*) The revised Agreement, with the increased compensation, was sent to Plaintiff on January 18,

---

[5] Mr. Wells states the lump sum amount represented six months of Mr. Smith's salary at Banner. (ECF No. 23-1 at 4.)

2022. (*Id.*) Two days later, Plaintiff returned an executed and signed copy of the Agreement. (*Id.* at 5.) Mr. Wells further notes that Plaintiff never contacted him again about the Agreement, never attempted to revoke, and Plaintiff was paid the compensation pursuant to the terms of the Agreement and has never returned the payment to Banner. (*Id.* at 5–6.) Plaintiff's Complaint also acknowledges accepting a "meager figure" in his Complaint (ECF No. 1 at 12) and identifies the "marginal sum of $52K" in his response to Defendants' motion (ECF No. 14 at 2). Plaintiff has provided no evidence contradicting or disputing Mr. Wells' statements.

The signed Agreement advised Plaintiff to consult with a lawyer before signing it (ECF No. 8-1 at 3) and in all-capital letters just above the signature lines, states:

> I HAVE READ AND UNDERSTOOD THIS AGREEMENT. I HAVE CONSULTED AN ATTORNEY BEFORE SIGNING THIS AGREEMENT OR VOLUNTARILY ELECTED NOT TO DO SO. I HAVE HAD SUFFICIENT TIME TO CONSIDER WHETHR TO ENTER INTO THIS AGREEMENT.

(*Id.*) E-mails provided by Defendants and referred to by Mr. Wells in his affidavit also indicate Plaintiff negotiated the terms (ECF No. 23-1 at 9–11, 18, 25–26), and Plaintiff references meeting or talking with his own attorney (*id.* at 11, 25).

The undisputed facts demonstrate Plaintiff had an adequate amount of time, twenty-one days, to review the Agreement and consult with an attorney to explore his rights. The Agreement advised him to consult with a lawyer before signing it, and there is evidence indicating he did in fact do so. Plaintiff reviewed the Agreement for two days before signing it. He also had seven days to revoke after signing, but did not do so. Defendants have submitted evidence that Plaintiff negotiated for certain terms of the Agreement, namely an increase in financial compensation. Plaintiff does not dispute he accepted payment of $52,000, or the additional amounts detailed in the Agreement. Moreover, the Agreement which Plaintiff signed stated he "agree[s] that [he is] signing this Agreement voluntarily and of [his] own free will and not because of any threats or

duress." (ECF No. 8-1 at 4.) *See also VanLandingham v. Grand Junction Reg'l Airport Auth.*, 603 F. App'x 657, 660–61 (10th Cir. 2015) (unpublished) (affirming district court's dismissal of plaintiff's complaint because her allegations were insufficient to plausibly plead that her past waiver of claims was not voluntary and knowing).

Even construing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the totality of circumstances indicates Plaintiff accepted valuable consideration in exchange for his knowing and voluntary relinquishment of the claims described in the Agreement, which includes Plaintiff's alleged claims here. Plaintiff's waiver of all Title VII claims pursuant to the Agreement was a knowing and voluntary one. He provides nothing to dispute this, and a review of the *Torrez* factors confirms the waiver was knowing and voluntary. Plaintiff is bound by his agreement. Defendants have carried their burden of establishing the Agreement, including Plaintiff's release as to all claims he now asserts, is valid. Defendants are entitled to summary judgment as a matter of law on all claims.

## CONCLUSION

"[I]t is well settled that the mere fact of an improvident or bad bargain or a feeling of latent discontent is not a sufficient basis to avoid the effect of an otherwise valid release." *Gibson*, 181 F.3d at 1169 (quoting *Blubaugh*, 842 P.2d at 1077). Plaintiff has not provided any evidence to create a genuine dispute of material fact or permit a rational trier of fact to resolve the issues in his favor. The undisputed facts do not support Plaintiff's claim of duress. There is no genuine dispute of material fact. The undisputed facts establish Plaintiff knowingly and voluntarily released his employment-related claims against Defendants under the signed Agreement. Therefore, Defendants are entitled to summary judgment as a matter of law.

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 7) is hereby **GRANTED**.

DATED this 27th day of January, 2023.

Scott W. Skavdahl
United States District Judge